# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

SUSAN E. BRITTING,

    Plaintiff,

    v.

ERIK K. SHINESKI, Secretary,
Department of Veterans Affairs,

    Defendant.

CIVIL ACTION NO. 3:08-CV-1747

(JUDGE CAPUTO)

## MEMORANDUM

Presently before the Court is Defendant Erik K. Shineski's Motion for Summary Judgment. (Doc. 21.) For the reasons discussed below, Defendant's Motion will be granted.

## BACKGROUND

**I. Facts**

Plaintiff Susan E. Britting has suffered from irritable bowel syndrome ("IBS") for approximately twenty-five to thirty years. (Admin. Rec. 0971).This condition caused Britting to experience bloating, pain, cramping and urgent defecation. (Admin. Rec. 0703). Before January 2007, Britting's IBS only affected her "very rarely" and "just wasn't ever a huge problem." (Admin. Rec. 0971). However, after January 2007, Britting's IBS attacks became more frequent and longer in duration; she would experience between three (3) and four (4) attacks per week characterized by a cramping/bloating/diarrhea cycle that could sometimes stretch into hours, and requiring her to use the bathroom six (6) times during an eight-hour workshift. (Admin. Rec. 0974-0975.) Britting believes that the IBS detrimentally affected her concentration at work and her ability to eliminate bodily waste, but did not affect her ability

to concentrate on other facets of her life and did not affect any other daily activities. (Admin. Rec. 1007-1008). Britting claims that these flare-ups were resolved by February 2008, and that she now has "next to no problems whatsoever with irritable bowel." (Admin Rec. 1005; Britting Dep. 123:8-12, June 12, 2009.)

Since 1981, Britting has worked as a medical secretary. (Admin Rec. 0967). Britting began working for the department of veterans affairs ("the VA") in March 2002 as an office automation assistant. (Doc. 22 at ¶ 8.) Her job duties included transcribing medical reports dictated by doctors by listening to dictation through a headset and transcribing the report into the patient's electronic record. (*Id.* at 10-11.) On January 23, 2007, Britting signed a performance plan that stated that in order to be considered "fully successful" in the area of "transcription line count" she had to transcribe a minimum of one hundred (100) lines per hour while maintaining a 92% accuracy rate. (*Id*. at ¶¶ 14-16.) Britting's performance appraisal on June 17, 2007, noted that she had been less than fully successful in the areas of "transcription line count" and "data input." *Id*. at ¶ 19.

Due to Britting's inability to meet the accuracy standards for transcription, Britting was contacted by her immediate supervisor, Jodi Moyer, and told to assign herself as the medical provider on all reports typed. (*Id.* at ¶ 47.) In July 2007, Britting failed to follow this instruction on six (6) notes and entered the medical providers' names instead. (*Id.* at ¶ 52.) According to Moyer, the transcriptionists' name is always the default provider when they begin taking dictation; therefore, in order to put the medical providers' names in the report, Britting had to actively remove her own name and put in that of the provider. (Admin. Rec. 0804.) Moyer had made this change in light of Britting's accuracy struggles and to allow Moyer to check the records before they were released to providers for their signature, lest the records be

2

signed with inaccuracies that were then entered into the patient's medical chart. (Admin. Rec. 0747.)

On August 23, 2007, Britting received a written admonishment for failure to follow directions based on the six (6) occasions she removed her name and entered the providers' names into the notes. (Doc. 22 at ¶ 57.) That same day, Britting again removed her name as the provider on two (2) notes and typed the medical providers' names in the record; the same problem occurred again on August 27, 2007. (*Id.* at ¶ 58-59.) On September 4, 2007, a notice of a proposed three-day suspension was issued for these additional failures to follow instructions. (*Id.* at ¶ 60.) Two days later, Britting again removed her name from a provider note, causing the medical provider to sign the document before review and correction. (*Id.* at ¶ 61.) The three-day suspension was then rescinded, and a proposed fifteen (15) workday suspension was issued. (*Id.* at ¶¶ 62-64).

VA management felt that the temporal proximity of the admonishment and proposed three-day suspension, coupled with Britting's continued failure to follow instructions suggested that Britting did not fully grasp the seriousness of her actions.[1] (Admin. Rec. 0855, 0861). Therefore, management felt that the increase to the longer suspension was warranted. (Admin. Rec. 0860-0861.) In considering the suspension, the interim director of the VA Medical Center in Lebanon, Margaret Caplan, considered, in writing, the twelve (12) factors outlined in *Douglas v. Veterans Administration*, 5 M.S.P.R. 280 (1981). (Admin Rec. 0598-0601). The fifteen (15) workday suspension without pay was handed down to Britting

---

[1] Among the transcription mistakes that were released to providers and signed were an incorrect insulin dosage, and a failure to include the provider's diagnosis that a patient was HIV positive. (Admin. Rec. 00601, 00615, 00753.)

3

on October 15, 2007. (Doc. 22 at ¶ 80.)

Also as a result of Plaintiff's failure to meet performance standards, Britting was put on a Performance Improvement Plan ("PIP") and given ninety (90) days to raise her performance to "fully successful." (*Id.* at ¶ 25.) During the PIP, Britting had bi-weekly meetings with Moyer, wherein Moyer would review Britting's errors with her and explain why these errors had been marked. (*Id.* at ¶ 29-30). During the PIP period, Britting's accuracy rating was 73% in July, 78% in August, and 89% in September. (Admin. Rec. 0177.) On October 15, 2007, the Lebanon VA issued a notice of proposed removal due to Britting's failure to meet the performance standard requirements while she was on the PIP. (Doc. 22 at ¶¶ 35.) On November 27, 2007, the VA notified Britting her was being fired from her position for failure to meet performance standards. (Doc. 22 at ¶ 46.)

## II.     **Procedural History**

On November 14, 2007, Britting filed an appeal with the United States Merit Systems Protection Board ("the Board") challenging her fifteen (15) workday suspension. (Admin. Rec. 0350). On December 24, 2007, Britting filed an appeal with the Board challenging her removal from her position. (Admin. Rec. 0350-0351). Britting claimed that her suspension was improper because she was discriminated against due to her alleged disability (*i.e.*, IBS), and because the penalty imposed was unduly harsh. (Admin. Rec. 0351). Britting also argued that her removal was inappropriate because the VA did not consider her IBS as a "mitigating factor" and retaliated against her for appealing her suspension to the Board. (Admin. Rec. 0351).

These appeals were joined. (Admin. Rec. 0351). A hearing was held for these appeals

4

on March 27 and 28, 2008. (Admin. Rec. 0351). On April 28, 2008, Administrative Law Judge ("ALJ) Lystra Harris entered an initial decision affirming both of the VA's actions. (Admin. Rec. 0351).  A final order was entered by the Board on August, 21, 2008, denying a petition to review the ALJ's decision, and declaring the ALJ's initial decision as final. (Doc. 1, Ex. B.)

On September 19, 2008, Plaintiff filed a Complaint, alleging violations of the Rehabilitation Act for suspending her and removing her because of her disability, and failing to provide reasonable accommodations (Count I). (Compl. ¶¶ 39-40). Plaintiff also seeks to have the ALJ's decision overturned because it was error to find that the VA met its burden of proving grounds for removal, and that the VA had properly applied the *Douglas* factors when imposing the suspension. (*Id*. at ¶¶ 46-47.) On September 25, 2009, Defendant filed a Motion for Summary Judgment. The motion has been fully briefed and is now ripe for disposition.

## **LEGAL STANDARD**

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c).  A fact is material if proof of its existence or nonexistence might affect the outcome of the suit under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Where there is no material fact in dispute, the moving party need only establish that it is entitled to judgment as a matter of law.  Where, however, there is a disputed issue of material fact, summary judgment is appropriate only if the factual dispute is not a genuine

5

one. *Id.* An issue of material fact is genuine if "a reasonable jury could return a verdict for the nonmoving party." *Id*.

Where there is a material fact in dispute, the moving party has the initial burden of proving that: (1) there is no genuine issue of material fact; and (2) the moving party is entitled to judgment as a matter of law. *See* CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2D § 2727 (2d ed. 1983). The moving party may present its own evidence or, where the nonmoving party has the burden of proof, simply point out to the Court that "the nonmoving party has failed to make a sufficient showing of an essential element of her case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party, and the entire record must be examined in the light most favorable to the nonmoving party. *White v. Westinghouse Elec. Co.*, 862 F.2d 56, 59 (3d Cir. 1988). Once the moving party has satisfied its initial burden, the burden shifts to the nonmoving party to either present affirmative evidence supporting its version of the material facts or to refute the moving party's contention that the facts entitle it to judgment as a matter of law. *Anderson*, 477 U.S. at 256-57.

The Court need not accept mere conclusory allegations, whether they are made in the complaint or a sworn statement. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). In deciding a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

## **DISCUSSION**

**I.      Discrimination Claims**

Discrimination claims adjudicated by the Merit Systems Protection Board are reviewed by federal district courts *de novo*. 5 U.S.C.A. § 7703(c).

**A. ADA Amendments Act of 2008**

On January 1, 2009, the ADA Amendments Act of 2008 ("the 2008 Amendments") became effective. Pub. L. No. 110-325, 122 Stat. 3553. The purpose of these amendments was to statutorily overturn recent Supreme Court precedent that strictly interpreted the term "disabled" and to reinstate "a broad scope of protection to be available under the ADA." *Id.* Plaintiff argues that the standards set out in the ADA Amendments Act of 2008 should govern this case, whereas Defendant argues that we should apply the stricter pre-amendments standard.

As often is the case, every legal canon seemingly spawns an equal and opposite canon. Thus, this Court is confronted by the maxim that courts should apply the law that is in effect at the time they make their decisions one hand, and the axiom that deep-rooted and elementary considerations of fairness militate against applying statutes retroactively. *Compare Bradley v. School District of Richmond*, 416 U.S. 694, 711 (1975), *with Landsgraf v. USI Film Prods.*, 511 U.S. 244, 265 (1994).

When a court is confronted with a situation where the events in the suit occurred before a federal statute was enacted, "the court's first task is to determine whether Congress has expressly prescribed the statute's proper reach." *Landsgraf*, 511 U.S. at 280. When congress has not done so, "the court must determine whether the new statute would have retroactive effect, *i.e.,* whether it would impair rights a party possessed when he acted,

7

increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." *Id.* If the statute would have retroactive effect, the presumption is that courts should not apply the statute retroactively "absent clear congressional intent favoring such result." *Id.*

Although the Third Circuit Court of Appeals has not directly decided whether the ADA Amendments Act applies retroactively, this Court has previously noted that "every court that has addressed the issue has concluded that the 2008 Amendments [to the ADA] cannot be applied retroactively to conduct that preceded its effective date." *Supinski v. United Parcel Service, Inc.*, No 3:06-cv-0793, 2009 WL 113796, at *5 n.6 (M.D. Pa. Jan. 16, 2009) (citations omitted). The only case cited by Plaintiffs to combat this assertion is an unpublished opinion from the Sixth Circuit Court of Appeals, *Jenkins v. National Board of Medical Examiners*, No. 08-5371, 2009 WL 331638 (6th Cir. Feb. 11, 2009).

In *Jenkins*, the plaintiff was a third-year medical student who submitted a request to the National Board of Medical for a reasonable accommodation for his reading disorder. *Id.* at *1. The court held that the 2008 Amendments applied to the plaintiff because he was seeking prospective relief for a yet-to-be-taken tests, "[r]ather than seeking damages for some past act of discrimination." *Id.*

Unlike *Jenkins*, this case involves a plaintiff who seeks vindication for past discriminatory acts, such as adverse employment decisions and prior failures to provide reasonable accommodations. Although some of the relief sought, such as reinstatement to her old job, could be considered prospective, the main thrust of Britting's case is to hold Defendant liable for acts that occurred before the 2008 Amendments became effective. Defendant, who may have relied on Supreme Court precedent in shaping legal policies and

8

actions, should not be held liable for actions that may have been legal at the time they were taken. As such, this Court will apply the law as it existed at the time of the alleged discriminatory actions, all of which occurred before the effective date of the 2008 Amendments.

### B. Disability Discrimination Claim

While this Court recognizes that Britting's claims are brought pursuant to the Rehabilitation Act, the standards used to determine whether there has been employment discrimination under the Rehabilitation Act are the same standards as those set out in Title I of the ADA. 29 U.S.C. § 794(d). To establish a prima facie case for disability discrimination pursuant to the Rehabilitation Act, a plaintiff has the burden of initially proving that he or she 1) has a disability, 2) is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations, and 3) was nonetheless terminated or prevented from performing the job. *Wishkin v. Potter*, 476 F.3d 180, 184-85 (3d Cir. 2007) (citing *Shiring v. Runyon*, 90 F.3d 827, 830-31 (3d Cir. 1996)).

Disability is defined as having "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment. 42 U.S.C. § 12102(1). Britting has not alleged or argued in her briefs that the last two definitions apply; instead, she focuses her claims on the allegation that she is actually disabled. Therefore, Britting must prove that 1) her IBS is a physical impairment, 2) it substantially limits her ability to perform a life activity and 3) that the activity is a major life activity. Britting claims that she is substantially limited in her ability to eliminate bodily waste properly and to concentrate. Defendant concedes that IBS is a physical impairment and that concentrating at work and functioning one's bowels

are major life activities. Thus, the crux of this case is whether Britting's IBS "substantially limits" her ability to perform the major life activities of waste elimination and concentration.

Before the 2008 ADA Amendments Act, the Supreme Court held that the term "substantially limited" needed "to be interpreted strictly to create a demanding standard for qualifying as disabled." *Toyota Motor Manufacturing, Kentucky, Inc., v. Williams*, 534 U.S. 184, 197 (2002). The Court also held that an impairment's impact must be permanent or long term to qualify as substantially limiting an individual. *Id.* at 198. This holding echoed the regulations accompanying the ADA, which defines "substantially limited" as "(i) [u]nable to perform a major life activity that the average person in the general population can perform; or (ii) [s]ignificantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity." 29 C.F.R. § 1630.2(j)(1). In considering whether a physical impairment substantially limits a major life activity, the regulations state that following factors should be considered: 1) the nature and severity of the impairment, 2) the expected duration of the impairment, and 3) the permanent or long term impact of, or resulting from, the impairment. 29 C.F.R. § 1630.2(j)(2). When an impairment is the type whose symptoms will vary greatly from person to person, courts must engage in an individualized assessment of the effect of the impairment. *Toyota*, 534 U.S. at 199.

Although there is no precedent in this circuit on whether IBS qualifies as a disability for purposes of the ADA or the Rehabilitation Act, our sister circuits lend some guidance. In *Maziarka v. Mills Fleet Farm, Inc.*, 245 F.3d 675, 677 (8th Cir. 2001), the plaintiff was a clerk in the hardware department of a store, who suffered from irritable bowel syndrome. The plaintiff's symptoms were "unusually severe," representing less than 0.1% of all sufferers of IBS, and causing him to be bedridden for as long as two days at a time. *Id*. The Eighth

Circuit Court of Appeals held that the plaintiff's IBS did substantially limit his ability to perform major life activities, reasoning that the IBS was unusually severe and would incapacitate him and "vex [him] for the rest of his life." *Id.* at 680.

In *Ryan v. Grae & Rybicki, P.C.*, 135 F.3d 867, 868 (2d Cir. 1998), the plaintiff, a legal secretary, suffered from a bowel problem known as ulcerative colitis. Her condition, like IBS, caused diarrhea, stomach cramps, and rectal bleeding. *Id.* The plaintiff's colitis flared up in the summer of 1993, causing "a nearly continuous cycle of three to four days of constipation followed by three to four days of erratic, bloody and painful diarrhea." *Id*. During that time period, she also had to be treated overnight in a hospital during a particularly bad bout of the condition; she was ultimately terminated from her job. *Id.* at 869.

In determining whether the plaintiff was substantially limited in the major life activity of "ability to control elimination of waste," the Second Circuit Court of Appeals examined the factors listed in the regulations. *Id.* at 870-71. The court found that the first factor, the severity and nature of impairment, weighed in favor of the plaintiff because she often had to run to the bathroom at a moment's notice and occasionally soiled herself. *Id.* at 871. As to the second factor, the duration of the impairment, the court of appeals noted that it could cut both ways, adding:

> On the one hand, Ryan's colitis appears to have no cure, and will trouble her for the rest of her life. Thus, its duration could militate for a finding of substantial limitation. However, although Ryan's colitis will persist for her entire life, her colitis is symptomatic only at certain times, and can be asymptomatic for long periods. Indeed, Ryan testified at her February 23, 1996 deposition that she had not been significantly bothered by her colitis since July or August of 1994. Moreover, Ryan stated that she suffers severe symptoms only in the summer months. Thus, although she will always be bothered by the possibility of a colitis attack, she will not at all times suffer from the symptoms (and concomitant limitations) of her colitis. We find that although Ryan's colitis is a permanent affliction, the fact that it is asymptomatic for long periods, and varies in intensity,

weighs against a finding of substantial limitation.

*Id*.

In determining the final factor, the expected long term impact of the impairment, the court held that it weighed against finding a substantial limitation. *Id.* Impact refers to the residual effect of the impairment, and because the residual effects of the plaintiff's colitis would only be felt for three or four months a year and could be asymptomatic for years, the court held that there were not significant residual effects. *Id.*

This case more closely mirrors *Ryan* than *Maziarka*. Britting has produced no evidence that her IBS rises to level of debilitation that the plaintiff in *Maziarka* suffered. She has not alleged that her IBS is unusually severe or leaves her bedridden. Her condition seems more like the plaintiff in *Ryan* because it can occasionally flare up and be extremely severe, but usually does not affect her everyday life and can be asymptomatic for years at a time.

In the major life activity of waste elimination, Britting is not substantially limited. Although the nature and severity of her IBS cuts in favor of a substantial limitation, the other two factors do not favor Britting's claims. Britting testified that her IBS very rarely affected her life for the decades she had it before January 2007, and that its has not bothered her for years. Britting's IBS "is a permanent affliction, [but] the fact that it is asymptomatic for long periods, and varies in intensity, weighs against a finding of substantial limitation." See *Ryan*, 135 F.3d at 871. Finally, there does not seem to any lasting residual effect, as Britting claims that she has had "next to no problems" with her IBS since the flare-up at issue in this case. This means that there is little to no permanent impact from Britting's IBS and the third factor also weighs against her. Therefore, she has not created a genuine issue of material fact that

12

she could be considered substantially limited in the major life activity of waste elimination.

The same arguments also apply to her ability to engage in the major life activity of concentrating. Even if this court only considers her ability to concentrate at work, ignoring the testimony that Britting's IBS did not affect her ability to concentrate anywhere else, the IBS only affects Britting's ability to concentrate at work during her infrequent flare-ups. The fact that she is asymptomatic and, therefore, able to concentrate at work for long periods of time militates against the second factor. Also, as noted above, there seems to be no long term impact on Britting caused by her IBS, thereby eliminating the third factor. As a result, Britting has not created a genuine issue of material fact that she could be considered substantially limited in the major life activity of concentrating at work.

Therefore, Britting is not disabled as defined by the ADA or the Rehabilitation Act as they were interpreted before the 2008 ADA Amendments Act. Thus, she cannot make out a prima facie case, and summary judgment will be granted for Defendant on the disability claims based on the adverse employment decisions.

**C. Reasonable Accommodation Claim**

In order to make out a prima facie case for a failure to accommodate claim, the plaintiff must prove that 1) she is an individual with a disability, 2) she can perform the essential functions of her position with accommodation, 3) her employer had notice of her alleged disability, and 4) the employer failed to accommodate her. *Conneen v. MBNA Bank*, 182 F. Supp.2d 370, 376 (D. Del. 2002) (citing *Rhoads v. F.D.I.C.*, 256 F.3d 373, 387 n.11 (4th Cir. 2001)). Because Britting has failed to prove that she is an individual with a disability, her claim for failure to accommodate also fails. Therefore, summary judgment will be granted

in favor of Defendant on this claim as well.

## II.     Non-Discrimination Claims

In order set aside a decision of the Merit Systems Protection Board on a non-discrimination claim, the district court can only do so if it finds that the agency's actions, findings, or conclusions are 1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, 2) obtained without procedures required by law, rule, or regulation having been followed, or 3) unsupported by substantial evidence. 5 U.S.C. § 7703(c).

Britting only alleges that the Board's decision is not supported by substantial evidence. (Compl. ¶¶ 45-46.) "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hathaway v. Merit Systems Protection Board*, 981F.2d 1237, 1240 (Fed. Cir. 1992) (quoting *Bradley v. Veterans Admin.*, 900 F.2d 233, 234 (Fed. Cir. 1990)).

In the instant case there was substantial evidence to support the Board's decision to affirm Britting's suspension and removal. In order to sustain an adverse action before the Board, the agency in question must prove, by a preponderance of the evidence, 1) the factual basis for the misconduct charged, and 2) that the disciplinary action promotes the efficiency of the service or agency. (Admin. Rec. 0357) (citing 5 U.S.C. §§ 7513(a), 7701(c)(1)(B); *Burroughs v. Dept. of the Army*, 918 F.2d 170, 172 (Fed. Cir. 1990)).

The administrative record contained evidence sufficient that a reasonable mind could accept the evidence as support for the fifteen (15) workday suspension. Despite admonishment and a proposed three-day suspension, Britting continued to fail in her ability to follow her supervisor's order that she keep her name as the provider on any notes she

14

transcribed. There was ample evidence to prove that this problem continued to persist for months despite the VA management's best efforts to avoid it. There was also sufficient evidence to support a Board finding that the disciplinary action promoted the efficiency of the service. By suspending Britting, the important goal of patient safety was more easily accomplished. Of particular force is the written consideration of the *Douglas* factors by Margaret Caplan. The decision to affirm Britting's suspension was based heavily on the reasons outline by Caplan in that document, and provided ample evidence to support the Board's finding that the VA appropriately suspended the Plaintiff.

In order to sustain a removal for unacceptable performance, the agency must show by substantial evidence that 1) the Office of Personnel Management approved the performance appraisal system, 2) the appellant's performance standards were communicated him or her, 3) the appellant failed to meet one or more of the critical elements of his or her position, and 4) that he or she was given a reasonable chance to improve performance. (Admin Rec. 0367.) (citing *Belcher v. Dept. of the Air Force*, 82 M.S.P.R. 230, 231-32 (1999)).

The first element was not an issue in this case. (Admin. Rec. 0368). There was substantial evidence to support the Board's finding that the standards were communicated to Britting, including the testimony of Jodi Moyer and the several performance plans that were signed by Britting herself. There was also evidence, including the medical documents transcribed by Britting and several e-mails between Britting and Moyer, that supported the finding that Britting was regularly failing to meet the accuracy standard required to perform her position. Finally, Britting was put on a ninety (90) day PIP before her removal, which supports a Board finding that she was given a reasonable opportunity to improve her

15

accuracy before removal.

Therefore, there is substantial evidence to support the Board's affirmation of the VA's suspension and removal of Britting. As such, summary judgment will be granted in favor of Defendant on the non-discrimination claims.

## **CONCLUSION**

For the reasons stated above, the Court will grant Defendant's Motion for Summary Judgment. An appropriate Order follows.


February 5, 2010 /s/ A. Richard Caputo
Date A. Richard Caputo
United States District Judge

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

SUSAN E. BRITTING,

    Plaintiff,

        v.

ERIK K. SHINESKI, Secretary,
Department of Veterans Affairs,

    Defendant.

CIVIL ACTION NO. 3:08-CV-1747

(JUDGE CAPUTO)

## **ORDER**

**NOW**, this  5th  day of February, 2010, **IT IS HEREBY ORDERED** that:

(1)    Defendant's Motion for Summary Judgment is **GRANTED**.

(2)    **JUDGMENT IS ENTERED** in favor of Defendant.

(3)    The Clerk of Court shall mark this case as **CLOSED**.


       /s/ A. Richard Caputo
       A. Richard Caputo
       United States District Judge